IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF MISSOURI

CENTRAL DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.                                                    No. 23-04012-01-CR-C-SRB

RYAN EDWARD HINE,

Defendant.

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through R. Matthew Price, the United States Attorney for the Western District of Missouri and undersigned counsel, respectfully submits this sentencing memorandum in the above captioned matter, set for a sentencing hearing on March 11, 2026. For the reasons set forth below, the Government recommends that the Court sentence the defendant, Ryan Hine, to 360 months' imprisonment and a lifetime of supervised release.

## I.      BACKGROUND

On March 29, 2022, HSI Newark Child Exploitation Group special agents were notified that an individual (Buyer 1) was scheduled to arrive at Newark Liberty International Airport from

Toronto, Canada. HSI Newark special agents responded to Newark Liberty International Airport (NLIA) for an inbound inspection and border search of Buyer 1 and his baggage for possible possession of child sexual abuse material (CSAM). An HSI Special Agent responded for an inbound inspection and lawful border search of Buyer 1 and his baggage. During the inspection and border search, the special agent identified images depicting CSAM material and text conversations between Buyer 1 and minor females in which Buyer 1 enticed minor females to produce custom CSAM for purchase on Buyer 1's electronic devices. The special agent seized Buyer 1's electronic devices as part of his investigation.

The special agent identified multiple chat conversations between Buyer 1 and self-identified minor females in which Buyer 1 appeared to entice to produce and distribute CSAM images and videos in exchange for payment. Through his investigation, the special agent discovered a CSAM production and distribution operation with identified payments received from Buyer 1 dating as far back as 2019. The CSAM production and distribution operation involved email accounts, chat message profiles, social media accounts, and digital payment account identifiers and monikers associated with, but not limited to, the following: "KandiexKae69-Kandie Kae", "LaciexLove69- Lacie Love", LaciexLove6901- Lacie Love", "RosieSnow69-Rosie Snow, "MandiexMaeMae69-Mandie Mae", and "BabieKitties-Babey Kitties." Ultimately, the special agent identified Ryan Edward Hine, with known addresses in Chicago, Illinois and Columbia, Missouri, as the individual who was in control of these accounts and enticing and paying multiple minor victims to produce CSAM.

During the investigation, the special agent identified multiple email accounts, to include but not limited to, "rosiesnow69@gmail.com, "Laciexlove69@gmail.com",

mandiexmae69@gmail.com and laciexlove69@gmail.com as being linked to financial accounts, message applications, and social media accounts being utilized in a large scale CSAM enticement, production, and distribution scheme. The Google accounts were linked to digital payment applications, to include but not limited to, Google pay, Cash App (Block Inc), PayPal/Venmo, and Amazon. The special agent identified that HINE was the controller of these accounts and creator and leader of a large scale CSAM production and distribution scheme.

On or about April 29, 2022, a search warrant for the buyer 1 Phone was issued by the court A lawful search and forensic extraction of the buyer 1 Phone was completed.

Law enforcement found an exchange between buyer 1 and "Laciexlove69 - Lacie" within the Snapchat application on the buyer 1 Phone that took place on March 28, 2022 through March 29, 2022. During the exchange the "Lacie" account controlled by Hine advertised a list of 23 CSAM videos for purchase:

1. 1:31 slow strip/showing off bod

2. 1:43 pussy play

3. 3:01 bikini strip into pussy/ass fingering

4. 1:23 legs spread fingering

5. 2:10 sucking/fucking this little thing I use as a toy

6. 1:05 topless intro vid saying name/age

7. 2:39 strip and spreading/finger play

8. 1:23 strip and dirty talk

9. 1:00 in the tub running the water on my clit

10. 2:53 fingering in the shower

11. 1:10 shower spreading

12. 3:00 weird fetish vid that I'm only gonna give the deets on if you ask lol

13. 1:54 shower vid using vibrator

14. 2:42 strip then dildo sucking/riding from behind

15. 4:17 nakey and using both toys at once

16. 3:05 dildo riding

17. 3:47 rough with both toys until I squirt

18. 3:13 dildo bj and pussy poundin

19. 1:25 teasey strip out of shorts and red lacey panties

20. 3:10 showin off in the shower with a lil vibrator play

21. 4:01 spreading/fingering asshole with dildo play

22. 4:23 upclose pussy fingering

23. 4:33 slow teasey strip

Also have random pics, and some sex stuff if you're into that (:

Moreover, the lawful search of the buyer 1 Phone revealed that sexually explicit videos discussed in the above pictured conversation between buyer 1 and "LaciexLove69 – Lacie" were sent by Snapchat username "Laciexlove69" to buyer 1 within the Snapchat application and within a secondary communication application, Telegram. Law enforcement identified the individuals in the explicit videos sent to buyer 1, as a 14-year old female (MV4), a sixteen-year-old minor female (MV2), and a sixteen-year-old minor male (MV3). Law enforcement identified payments for the videos of MV4, MV2, and MV3 were made by buyer 1 to Cash App account "Kandie Kae - $kandiexkae69".

Law enforcement interviewed MV4, who stated she was not in control of the "laciexlove69" Snapchat account at the time of the conversation with BUYER 1 in March 2022.

Lawfully obtained records revealed that on or about August 3, 2020, Cash App account "Kandie Kae - $kandiexkae69" added the customer address of "604 Upland Creek Road Columbia, Missouri 65201" to the account profile. The same "604 Upland Creek Road Columbia, Missouri 65201" address was added to the customer account again on September 6, 2020, and November 20, 2020. Furthermore, lawfully obtained records revealed that "Kandie Kae - $kandiexkae69" debit cards #4403932023271967, #4403932032810284, and #4403933504361228 were activated utilizing the same "604 Upland Creek Road Columbia, Missouri 65201" address. Records also revealed that, in the same time period described above, prior to the "Kandie Kae - $kandiexkae69" identifiers, the account utilized the following identifiers, "Lacie Love - $laciexlove69".

In or about May 2022, law enforcement identified Ryan Edward Hine as a resident of 604 Upland Creek Road, Columbia, Missouri.

Law enforcement identified records produced by Cash App for "KANDIE KAE - $kandiexkae69", showing approximately twenty-three (23) ATM withdrawals, from in or around November 2020 through in or around May 2022, totaling approximately $8,918.00 USD, made at the same convenience store located at 900 Conley Road Columbia, MO. The Cash App debit cards for the KANDIE KAE account used for the 23 ATM withdrawals were sent to and activated at 604 Upland Creek Road Columbia, Missouri. The Cash App debit cards for the KANDIE KAE Cash App account were sent to the 604 Upland Creek Road, Columbia, Missouri address, to include the Cash App Visa Debit card #4403933504361228. Records from Cash App showed the card was created and activated on or about December 5, 2020 with the name "Lacie Love".

On December 5, 2020, the above credit card, Visa Debit Card #4403933504361228 was activated, Hine changed the "$cashtag" name from "$Laciexlove69" to "$kandiexkae69".

In or around July 2022, law enforcement lawfully obtained security camera footage from the convenience store located at 900 Conley Road Columbia, Missouri for ATM withdrawals of May 1, 2022, for Cash App debit card #4403933504361228. Law enforcement observed an adult male matching the description of Hine conducting the ATM withdrawals on the same date and time identified by Cash App. Law enforcement also observed that once the adult male from the images above both arrived and departed the parking lot of the convenience store in a grey four-door sedan.

In or around September 2, 2022, Hine was encountered by law enforcement during an inbound, international land border arrival into the United States from Toronto, Canada. After HINE's arrival at the Ambassador Bridge Port of Entry in Detroit, Michigan, law enforcement conducted a lawful inspection and search of HINE, his vehicle, and all merchandise in his possession which were presented at the port of entry. Law enforcement recovered a wallet from Hine, and found a Cash App debit card #4403933504361228 with inscription "Lacie Love."

Hine's vehicle, in which he made entry into the United States at the Ambassador Bridge Port of Entry in Detroit, Michigan, was a grey four-door sedan.

Additionally, law enforcement discovered multiple electronic devices in Hine's possession at the time of his arrival at the port of entry. Hine's electronic devices were subsequently seized on September 2, 2022. Law enforcement identified self-produced images on the phone showing Hine wearing a similar patterned shirt as the gas-station surveillance video.

In August 2022, the special agent travelled to various locations in Monroe County, Mississippi with an HSI forensic interview specialist (FIS) to locate, identify, and interview minor victims MV2, MV3, and MV4.  All three minors or their parent/guardian confirmed their dates of birth to the special agent during their interviews.

In her statements to the FIS and the special agent, MV2 identified herself in sanitized CSAM images and videos found in the cellular phone of Buyer 1.  MV2 identified she used the moniker "Quin and "Quin Zell" during production of CSAM and to receive payment for CSAM production.  MV2 identified that CSAM was produced in various locations in Mississippi and specifically stated that the CSAM videos of her having sex with MV3 were produced at houses

and/or hotels in the Monroe County, Mississippi area in approximately September through November 2021. MV2 also identified lingerie and sex toys sent to her address for the production of CSAM videos and images. Law enforcement identified multiple Amazon parcels sent to both MV2 and MV4 accounts using RosieSnow69@gmail.com. Additionally, the special agent located a photo of Hine on MV2's cell phone in a conversation with "Carmen" which was a vanity name associated with Laciexlove69 Snapchat account.

After the interview of MV2, the special agent visited multiple hotels in Monroe County where CSAM images and videos of MV2 and MV3 were produced. The special agent recovered room reservation statements and photographed the rooms notated on the room reservations. The rooms were purchased by an adult male friend of MV2's. CashApp records show the KandieKae account reimbursing the male friend for the room.

Law enforcement identified that, beginning in or around July 2018, Hine began communicating on a text messaging platform with a 15-year-old female, MV1, who was residing in Mississippi. Hine inquired and was aware of MV1's minor age from the beginning of their communication. During this time in 2018, Hine began to regularly request that MV1 produce and send Hine sexually explicit images and videos through the chat platforms and text messages.

From approximately January 2019 through December 2019, Hine traveled monthly, from either Chicago, Illinois or Columbia, Missouri, to locations in Mississippi for the purposes of engaging in sexual acts with MV1. Law enforcement identified payments to hotels, motels, rental cars, and bus transportation by Hine corroborating his travels. Hine both traveled through the state of Missouri and maintained an address in the state of Missouri during the commission of the illegal

acts. Law enforcement also identified that Hine purchased multiple sex toys for MV1 to use on herself in the production of CSAM videos and during the sexual encounters with Hine.

Additionally, MV1 identified that Hine used his cellular phone to record the sexual acts committed on MV1 during Hine's trips to Mississippi from approximately January 2019 through November 2019, which he then advertised, along with videos and images of just MV1, to buyers on multiple chat communication services. MV1 stated that Hine would pose as MV1 to the buyers. Law enforcement corroborated that Hine provided cash payments, payments through electronic payment platforms, and a variety of gifts to MV1 for the CSAM production and distribution, and that he continued to sell CSAM images and videos of MV1 through at least December 2020.

In August 2022, law enforcement identified multiple CSAM videos that were sent to a 16-year-old minor female victim, MV2, in or around October and November 2021 for the purposes of MV2 producing CSAM videos for sale and distribution with 16-year-old minor male victim, MV3. Law enforcement identified that two of the CSAM videos sent to MV2 depicted Hine engaging in sexual acts with MV1 at a motel in Mississippi between February 2019 and November 2019. MV2 identified these videos as examples of production for buyers. During this time, Hine used videos and images depicting MV1 while using the identifiers "Rosie," "Mandie," and Lacie." MV2 was paid for production of those CSAM videos by a Cash App account established and controlled by Hine.

While analyzing the "LacieLove/KandieKae" CashApp account, the special agent noticed twelve (12) payments totaling approximately $976 USD to the Cash App account of minor female victim (MV5). The special agent identified multiple CSAM images and videos on Buyer 2's and Buyer 3's cellular devices depicting MV5, whom they knew as "Olivia."

On or about January 22, 2024, MV5 was interviewed by a special agent and the FIS at the Child Advocacy Center.

During the interview, MV5 stated and confirmed her full name, current residence, and date of birth in 2005. MV5 stated she was currently a senior in high school in Colorado. MV5 stated she met people online by the names "Rosie," "Lacie," and "Kandie Kae." MV5 stated the communication began on "Omegle" around the summer before her freshman year, by someone "asking if she wanted to make money." MV5 stated she was 14 years old when her communication with "Lacie" began, and that "Lacie" eventually asked her about making money and selling videos. MV5 stated that communication with "Lacie" transferred over to SnapChat. MV5 stated she used multiple electronic devices for communication and that she also downloaded the "Telegram" app to send "Lacie" videos because "Lacie" said MV5 could not send the videos over Snapchat. MV5 stated that "Lacie" sent videos of a girl that "Lacie" claimed was her, and that "Lacie" held herself out to be a 16 or 18 year old female.

MV5 stated that a week or two after they met, "Lacie" started asking MV5 about making videos that included nudity and sexual acts. MV5 stated that "Lacie" would ask her to make videos having sex with other people and MV5 replied to "Lacie" that she was in 8th grade and not doing that.

MV5 stated her fake name was "Olivia." MV5 stated it was almost always videos and not pictures she was asked to produce, and that she sent the videos through Telegram or Kik because "Lacie" said they didn't save well or you weren't allowed to on SnapChat.

10

MV5 understood the process as "Lacie" having a bunch of customers, a basis of people "she" would send CSAM to. MV5 stated she referred to "Lacie" as her 'pimp.' MV5 stated she would send CSAM to "Lacie" and then "Lacie" would send them through kik or telegram to the customers. MV5 stated she involved another minor female in a video one time. MV5 described making a video with a friend where "Lacie" asked her to make out and have MV5's friend write MV5's boob size on MV5's chest in the video. MV5 identified herself in screenshots of CSAM video files found in Buyer 2's possession.

MV5 showed some of the conversations between her and "Lacie" to the special agent. "Lacie" requested MV5 produce pictures and videos and provide her directions on how to pose, what to say, and what to do.

During the interview, MV5 stated "Lacie" introduced her to an adult male who wanted to travel to Colorado and engage in sexual activity. MV5 saved the contact associated with the adult male. The snapchat contact showed an avatar with the name "Ryan" attached. The avatar had short brown hair and a scruffy beard, which were consistent with Ryan Hine's appearance.

The special agent also took a photograph of the CashApp screen showing MV5 received $976.00 from the "Kandie Kae" account.

While examining Hine's cell phone that was seized at the Canadian Border, the HSI Special Agent located an SMS chat conversation between MV6 and Hine which occurred on August 18, 2020. During this conversation, Hine and MV6 engaged in sexually explicit conversation, discussed engaging in a threesome with MV6's boyfriend, and each sent sexually explicit photos. MV6 told Hine she was 16 and Hine asked her questions about being in high

11

school. Hine received multiple images depicting CSAM of MV6 and sent a photograph of his penis to MV6. During a subsequent forensic interview, MV6 identified herself in some of the photographs recovered from Hine's phone.

On June 17, 2025, the defendant appeared before U.S. Magistrate Judge Willie J. Epps and entered a plea of guilty to Counts one and six of the Indictment which charges attempted enticement of a minor in violation of 18 U.S.C. § 2422(b) and advertising child pornography in violation of 18 U.S.C. § 2251(d).

The United States Probation Office calculated the Sentencing Guidelines as follows:

**Count 1 (Group 1)**

| | |
|---|---|
| **Base Offense Level: § 2G2.1** | **32** |
| **2G2.1(b)(1)(B)** | **+2** |
| **2G2.1(b)(2)(A)** | **+2** |
| **2G2.1(b)(3)** | **+2** |
| **2G2.1(b)(6)(B)** | **+2** |
| **Total Offense Level** | **40** |

**Count 6 (Group 2)**

| | |
|---|---|
| **Base Offense Level: §2G2.2** | **22** |
| **2G2.2(b)(3)(E)** | **+7** |
| **2G2.2(b)(5)** | **+5** |
| **2G2.2(b)(6)** | **+2** |
| **2G2.2(b)(7)(D)** | **+5** |
| **Total Offense Level** | **41** |

| | |
|---|---|
| **Multiple Count Adjustment** | **+2 units** |
| **§4B1.5(b)(1)** | **48** |
| **Acceptance of Responsibility** | **-3** |
| **Total Adjusted Offense Level** | **43 (because total offense level was more than 43)** |

With his Criminal History Category of I, this calculation results in an applicable Guidelines range Life. The Government recommends a sentence of 360 months.

## II. <u>DISCUSSION</u>

Even after *United States v. Booker*, 543 U.S. 220 (2005), sentencing begins with a properly calculated advisory Sentencing Guidelines range, including any applicable departures. *See* United States Sentencing Commission, <u>Guidelines Manual</u>, § 1B1.1(a) and (b). The Court then must consider that range, along with all the factors listed in 18 U.S.C. § 3553(a), in arriving at the final sentence. USSG § 1.1B1(c).

The Supreme Court has observed that "in the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Kimbrough v. United States*, 552 U.S. 85, 109 (2007) (quoting *Rita v. United States*, 551 U.S. 338, 350 (2007)). While 360 months is a significant sentence, given the lifelong impact the defendant's conduct will have on the defendant's multiple victims. and the need to protect future victims from the defendant, it is a reasonable sentence, and is justified under § 3553(a) for the reasons set forth below.

### A. *Application of the § 3553(a) Factors*

13

**1. History and Characteristics of the Defendant**

The defendant's history and characteristics are the first of the factors enumerated in 18 U.S.C. § 3553(a)(1). The defendant has no criminal history, however, that is unremarkable in a child exploitation case[1]. Child sexual exploitation is an offense that is shrouded in secrecy, shame and is committed behind closed doors. Individuals who use the internet to exploit minors often conceal their identities, target vulnerable victims, and use gifts or threats to encourage victims not to disclose. The defendant was able to recruit multiple minors to produce child pornography for a long period of time without getting caught. It is common for victims to wait years to disclose and many never disclose their abuse.

The defendant was raised by both his parents in a home free from abuse or neglect. His father was diagnosed with stage 4 melanoma in 2012, which caused an emotional and financial strain on the family. The defendant continues to enjoy support from his family (PSR ¶¶ 104-110.)

While the defendant reports prior mental health related ailments the record also reflects a pretrial evaluation found there was some evidence that he was feigning his symptoms (D.E. 41, 10.) The defendant's mental health concerns do not explain or mitigate his conduct in this case.

---

[1] 70.3% of child pornography production offenders were assigned to criminal history category 1, the lowest category. By contrast, fewer than half (44.2%) of all other federal offenders were assigned a criminal history category 1. United States Sentencing Commission, *Federal Sentencing of Child Pornography: Production Offenses* (2021.)

The defendant reported regularly using marijuana but did not indicate his use was problematic. The defendant reported he used synthetic cannabis and prescription pills while incarcerated (PSR ¶ ¶125-131.)

The defendant earned a bachelor's in science in health sciences in April 2023 and maintained employment until his arrest in the present offense.

The defendant's history and characteristics do not mitigate his conduct in this case and supports the government's sentencing recommendation.

**2.      The Need to Protect the Public from Future Crimes by the Defendant and the Nature and Circumstances of the Offense**

The need to protect the public from the defendant's own future crimes, 18 U.S.C. § 3553(a)(1)(C), the nature and circumstances of the offense of conviction, 18 U.S.C. § 3553(a)(1), as well as the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, 18 U.S.C. § 3553(a)(2)(A), and the need to deter other criminal conduct, 18 U.S.C. § 3553(a)(2)(B), all weigh in favor of the sentence that the Government recommends.

At a time when the defendant should have been focusing on his studies and enjoying the college experience, he systematically preyed on vulnerable teens, as young as 13, for his own sexual gratification and financial benefit. The defendant initially enticed a 14-year-old minor online and traveled to Mississippi to engage in sexual intercourse after she had turned 15-years-old. The defendant recorded their sexual contact and later facilitated selling the CSAM he created

to buyers of over the internet. This gave the defendant the idea for his "business model" to recruit and sexually exploit other minor females.

The defendant disguised his identity by pretending to be a teenage girl to convince and entice other minor females to produce CSAM so he could sell their images to other predators over the internet. The HSI special agent identified a total of 13 victims as part of the defendant's scheme. The defendant would hunt for victims on websites such as "Omegle"[2] and SnapChat, where he knew he would find minors. The defendant gained his victims' trust by portraying himself as a minor female who had been selling her own videos to other individuals. The defendant assured his minor victims they would not have to interact with the buyers themselves. The defendant would hold himself out as the minor females depicted in CSAM videos to prospective buyers. The defendant would then act as a "middleman" between the victims and prospective buyers, communicating what buyers wanted the minors to produce. The defendant encouraged the minor females to produce videos of an extreme nature because they "sold better."

Videos that the defendant produced and sold have been identified in the collections of multiple internet predators. Among the identified buyers are a corporate executive from New Jersey[3], a healthcare executive from the Eastern District of New York[4], a primary school teacher

---

[2] Omegle was a popular, free, anonymous online chat website founded in 2009 that randomly paired users for one-on -one text and video chats. The website was widely known in the law enforcement community as a place where predators groomed minor children and created explicit conduct. The website was shut down on November 9, 2023, following a lawsuit from a teenager who became a victim of child exploitation. https://en.wikipedia.org/wiki/Omegle

[3] https://www.justice.gov/usao-nj/pr/essex-county-man-pleaded-guilty-online-enticement-minors-and-child-pornography-crimes,

[4] https://www.justice.gov/usao-edny/pr/long-island-man-charged-sexual-exploitation-children,

from Australia[5], an orthodontist from the Western District of Michigan[6], former U.S. Airforce from New Jersey[7], and a U.S. Navy deserter who fled to Mexico[8], among others[9]. The CSAM videos the defendant sold will forever be available on the Internet.

The defendant's conduct was not a one-time lapse of judgement or a drunken mistake. The defendant's conduct occurred over years, required a great deal of time to both recruit victims and negotiate sales with prospective buyers, and required him to directly interact with vulnerable children. The defendant's conduct was not solely motivated by financial gain. The defendant traveled and engaged in sexual intercourse with at least one minor female and attempted to meet other minor females to engage in sexual activity. The defendant's depraved conduct towards over a dozen victims show his complete disregard for the humanity and worth of these minor females. The defendant saw these girls as a commodity for personal financial and sexual gain.

---

[5] https://www.afp.gov.au/news-centre/media-release/mid-north-coast-man-jailed-multiple-child-abuse-material-offences,

[6] https://www.afp.gov.au/news-centre/media-release/mid-north-coast-man-jailed-multiple-child-abuse-material-offences,

[7] https://www.afp.gov.au/news-centre/media-release/mid-north-coast-man-jailed-multiple-child-abuse-material-offences,

[8] https://www.afp.gov.au/news-centre/media-release/mid-north-coast-man-jailed-multiple-child-abuse-material-offences,

[9] https://www.justice.gov/usao-ndoh/pr/ohio-man-sentenced-half-century-federal-prison-sexual-exploitation-children, https://www.justice.gov/usao-wdva/pr/ny-man-sentenced-25-years-prison-traveling-lynchburg-meet-14-year-old-sex, https://www.secretservice.gov/newsroom/releases/2022/11/previously-convicted-randolph-county-sex-offender-sentenced-20-years

The nature and circumstances of the offense and the need to protect future victims from this defendant support the 360 months' sentence recommended by the Government.

**3.    Balancing of All § 3553(a) Factors**

In a case like this it can be difficult to determine what amount of prison time is sufficient, but not greater than necessary, to achieve justice.  The defendant has forever altered these young females lives who must live with the fact that CSAM the defendant enticed them to produce will forever be out in the world.  No child should ever have to endure the lifelong detrimental effects of sexual exploitation.

A 360-month sentence will address the nature and circumstances of the offense, promote the seriousness of the law and ensure that the community will be safe from the defendant until he is in his fifties.

**B.    _Restitution_**

Restitution is mandatory pursuant to 18 U.S.C. § 2259(b)(2)(B), however no restitution has been requested at this time.

**C.    _Recommended Sentence for Monetary Penalties_**

Due to the defendant's lack of financial resources, the government is not recommending a fine or special assessment in this matter. A $100 Special Assessment per count is mandatory and, as a result, $200 must be paid in full by the defendant no later than the day of sentencing.

**IV.    <u>CONCLUSION</u>**

The Government respectfully suggests that a sentence of 360 months constitutes a sentence sufficient, but not greater than necessary, to achieve justice.

Respectfully submitted,

**R. Matthew Price**
United States Attorney

By          /S/

**Ashley S. Turner**
Assistant United States Attorney
Missouri Bar No. 62314

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that a copy of the foregoing was delivered on February 20, 2026, to the CM-ECF system of the United States District Court for the Western District of Missouri for electronic delivery to current counsel of record.

_____/S/_____

**Ashley S. Turner**
Assistant United States Attorney
19